**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

EDWARD OMARRAH, JR.,

       Petitioner,

v.                               Case No. 2:20-cv-00255

DONNIE AMES, Superintendent,
Mount Olive Correctional Complex,

       Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).   Pending before the court is Respondent's Motion for Summary Judgment (ECF No. 7).

## RELEVANT PROCEDURAL HISTORY

### A.  The petitioner's criminal proceedings

On October 15, 2008, Petitioner was indicted in the Circuit Court of Mercer County, West Virginia, on one count of first-degree murder, stemming from the shooting death of his girlfriend on August 5, 2008.   On August 4, 2008, Petitioner had an argument with the victim and threatened her in the presence of other people, stating something to the effect of, "If I can't have you nobody will."   (ECF No. 7, Ex. 3 at 41). The following day, Petitioner retrieved his gun from a pawn shop, purchased a holster from a second pawn shop, and then returned home where another argument with the victim ensued.   (*Id.* at 41-42).   During this second argument, Petitioner drew the

weapon from his holster, disengaged the safety, and shot the victim in the chest, killing her. Petitioner initially told police that the gun accidentally fired, but later confessed that he intentionally shot the victim out of anger. (*Id.*) *See also Omarrah v. Ames*, No. 18-0754, 2020 WL 261736, at *1 (W. Va. Jan. 17, 2020).

Throughout his circuit court proceedings, Petitioner was represented by two attorneys, T. Lynn Fuda and Kris Kostenko. (ECF No. 7, Ex. 3 at 1; Ex. 5 at 1). Petitioner underwent a competency and criminal responsibility evaluation by Dr. Bobby Miller, who was retained by defense counsel, and a written evaluation report was prepared by Dr. Miller on January 21, 2009. (ECF No. 7, Ex. 2, filed under seal in ECF No. 12). The essential findings of Dr. Miller's report were summarized as follows by the Supreme Court of West Virginia ("SCAWV") in its decision affirming the denial of Petitioner's state habeas corpus petition:

> The evaluator determined that petitioner had an extensive history of psychiatric diagnoses and treatments. The evaluator also determined that petitioner suffered from impulse control disorder, which may have affected his ability to form the intent to murder the victim. The evaluator opined that petitioner evidenced diminished capacity and that his "circumstance may be viewed in two ways."

> First, the evaluator suggested that petitioner experienced a volatile relationship with the victim and "feared losing her." "Being insecure and jealous," petitioner decided that, if he could not have her, no one could have her. Notably, a witness overheard petitioner make a similar statement on the day prior to the shooting. The evaluator further opined that these emotions motivated petitioner to reclaim his gun from the pawn shop and load it before he entered the home. Petitioner confronted the victim about their relationship and shot her when she did not respond as he desired.

> Second, the evaluator suggested that, on the day of the shooting, petitioner had sufficient money to reclaim his gun from the pawn shop. While petitioner was handling the gun in the bedroom, the victim confronted him and accused him of sexual misconduct involving a twelve-year-old girl. The topic was especially sensitive to petitioner given his

history of being a victim of sexual molestation as a child and his father's imprisonment for sexually molesting petitioner's sister. Petitioner became enraged and entered a "blackout" state during which he shot the victim. Ultimately, the evaluator concluded that petitioner was competent to stand trial and did not lack the substantial capacity to appreciate the wrongfulness of his actions or conform his conduct to the requirements of the law.

*Omarrah*, 2020 WL 261736, at *1-2.

On April 16, 2009, Petitioner pled guilty to first-degree murder, pursuant to a binding written plea agreement, in return for a life sentence with mercy. The court engaged in a thorough colloquy with Petitioner and counsel about the terms of his plea agreement, his ability to understand the elements of the offense and the proceeding before the court, and all rights he was giving up by pleading guilty. (ECF No. 7, Ex. 3 at 4-29). The court reviewed the indictment and plea documents with Petitioner and Petitioner affirmed his understanding of each. (*Id.* at 34-40). Several times during the hearing, the court specifically mentioned that, even with the plea agreement, Petitioner faced life in prison, with only the possibility of parole after 15 years. (*Id.* at 4-5, 7-8, 48-49, 52).

The court further received a proffer from the State about the evidence it intended to prove at trial. (*Id.* at 40-41). Petitioner acknowledged that he had threatened the victim on the previous day, that he retrieved the gun from the pawn shop, that he shot the victim, and that he was pleading guilty because he was "in fact guilty." (*Id.* at 42). The court established with Petitioner and counsel that a diminished capacity defense was explored, but they did not believe it was a viable defense and that it was in Petitioner's best interest to plead guilty. (*Id.* at 30-31, 43).

Petitioner further confirmed that he was fully satisfied with the assistance of his counsel and that he was not told or promised anything that was not covered by the

agreement and the plea colloquy.   (*Id.* at 31-32, 44).   Petitioner had no questions about the plea agreement or anything about the plea proceedings and confirmed that he wanted the court to accept his guilty plea.   (*Id.* at 44-45).   Accordingly, the court found that Petitioner had knowingly and intelligently waived his rights and that his guilty plea was freely and voluntarily tendered.   (*Id.* at 45-48).

During the hearing, Petitioner waived his right to a presentence investigation report and, consistent with his plea agreement, was sentenced to life in prison with the possibility of parole after 15 years.   (*Id.* at 51-52).   Petitioner did not appeal his judgment order.

### B.    Petitioner' state habeas corpus proceedings

On December 28, 2015, Petitioner filed a petition for a writ of habeas corpus in the Circuit Court of Mercer County.   Thereafter, counsel (Paul R. Cassell) was appointed to represent Petitioner, and, in November of 2016, an amended petition was filed alleging that Petitioner received ineffective assistance of counsel based upon trial counsel's failure to properly explain and present a diminished capacity defense and failure to adequately explain the terms of the plea, including the proper term of incarceration.   (ECF No. 7, Ex. 11).   Petitioner further alleged that his guilty plea was involuntary, and that counsel failed to discuss his appellate rights with him.[1]   (*Id.*)

On November 28, 2016, the circuit court held an omnibus hearing at which Petitioner was the sole witness.   (ECF No. 7, Ex. 8).   Petitioner testified that he had a

---

[1]  Petitioner also submitted a checklist of additional grounds for relief pursuant to the holding in *Losh v. McKenzie*, 277 S.E.2d 606 (W. Va. 1981).   However, the other alleged errors contained in that checklist are not relevant to the issues before this court.   Accordingly, the undersigned finds it unnecessary to list them here.

history of mental illness and had difficulty reading and writing. (*Id.* at 18-20). Petitioner claimed that he did not understand the terms of his guilty plea and that his counsel only discussed the plea with him for three minutes and would not let his mother assist him. He further contended that his counsel advised him that, if he entered the plea, he would only be incarcerated for seven and a half years. (*Id.* at 20-27). Petitioner further testified that his counsel completed the forms in support of his guilty plea, and that he merely signed them. (*Id.* at 27-31). However, on cross-examination, he clarified that counsel read the forms to him, that he provided the answers, and that, due to his poor literacy and penmanship, counsel recorded his answers. (*Id.* at 40-43).

Petitioner also testified that his counsel never explained the diminished capacity defense to him and that no evidence was ever reviewed with him. (*Id.* at 23-27). He now asserts that he does not remember shooting the victim because he suffered a blackout. (*Id.* at 38). He also suggested to the court that he was not fully paying attention during the plea proceedings and that he lied under oath that day. (*Id.* at 46-49). The court read numerous excerpts from the plea colloquy where Petitioner confirmed his understanding of the offense, his plea, and the consequences thereof. (*Id.* at 45-59).

On July 26, 2018, the circuit court issued a comprehensive 85-page order denying Petitioner habeas corpus relief on all grounds raised in his amended petition. (ECF No. 7, Ex. 13). Regarding Petitioner's claim that his guilty plea was involuntary, the order cited to extensive portions of the plea hearing transcript, which clearly demonstrates that the court specifically informed Petitioner that he would be subject to a 15-year term of incarceration before becoming parole eligible, and Petitioner acknowledged that sentence

exposure multiple times.   As further noted by the order, during the plea hearing, Petitioner testified that he was taking medication, but confirmed through questioning that the medication did not affect his ability to understand the proceedings. Additionally, the transcript demonstrates Petitioner's acknowledgement that he was satisfied with his counsel and expressed no complaints with counsel's performance.   (*Id.* at 15-40).

The circuit court found that petitioner was adequately represented, that he was found criminally responsible for his actions through the opinion of the forensic evaluator, that he was competent to understand the plea hearing and the consequences thereof, and that he was aware of the rights he was waiving.   The court ultimately concluded that Petitioner's claim that he did not knowingly, voluntarily, and intelligently enter into the plea agreement was without merit.   (*Id.* at 41).

The court further found that trial counsel, with the assistance of an investigator, adequately investigated the case, determined that there were several witnesses who could testify about Petitioner's abusive relationship with the victim and threats he had made to her, and ensured that Petitioner was aware of and agreed that there was no good faith basis to claim a diminished capacity or any other defense.   (*Id.* at 67).   The court further found that "Petitioner understood the plea agreement in which he entered," and that "trial counsel, despite overwhelming evidence, managed to get the Petitioner life in prison with the possibility of parole after fifteen years when he was facing a possible sentence of life without parole."   (*Id.*)   Thus, the court concluded that Petitioner's claim of ineffective assistance of counsel was also without merit.   (*Id.*)

On August 23, 2018, Petitioner appealed the denial of his habeas corpus petition to the SCAWV. (ECF No. 7, Ex. 14). On appeal, Petitioner asserted: (1) that the circuit court erred in denying his ineffective assistance of counsel claim; and (2) the circuit court erred in denying his claim that his guilty plea was involuntary. (ECF No. 7, Ex. 15 at 1, 7–13). On January 17, 2020, the SCAWV issued a Memorandum Decision affirming the circuit court's denial of Petitioner's habeas petition. *See Omarrah*, 2020 WL 261736, at *1, *5.[2]

With respect to Petitioner's first assignment of error, the SCAWV opined that "the circuit court did not err in denying petitioner's ineffective assistance of counsel claim as petitioner failed to meet the requirements of *Strickland*." *Id*. at *4. The SCAWV specifically found as follows:

> Petitioner provided testimony that counsel only discussed the plea with him for a few minutes prior to the hearing, which resulted in his confusion of the sentence and other terms. However, testimony during the plea hearing showed that petitioner's counsel discussed the plea with him for "two-and-a-half hours" while completing the forms in support of his guilty plea. Further, in regard to petitioner's contention that he did not complete these forms, petitioner admitted that his answers were recorded by counsel due to his poor spelling and penmanship. Petitioner acknowledged that he was asked, and provided the answers for, the questions on forms in support of his guilty plea. Petitioner testified that he understood all of the circuit court's questions and that his counsel correctly answered all his questions. Petitioner highlights a moment in his plea hearing wherein he asked for a break to ask a question of his counsel and asserts that he asked for the break because he "did not know what to do." However, this illustrates that counsel was able to answer petitioner's questions and assist him. Petitioner was fully aware that he could halt the proceedings if he did not understand or desire to enter his guilty plea. Additionally, the circuit court discussed the diminished capacity defense during the plea hearing and petitioner acknowledged that he believed his decision to plead guilty was in his best interest. Indeed, the State possessed substantial evidence against

---

2    The SCAWV issued its Mandate on February 18, 2020. (ECF No. 7, Ex. 16).

petitioner, including his confession to intentionally shooting the victim and corroborating witnesses to petitioner's threats to harm the victim. Although the forensic evaluator proposed a diminished capacity scenario, the evaluator also found petitioner did not lack the substantial capacity to appreciate the wrongfulness of his actions or conform his conduct to the requirements of the law.    Further, the State's evidence supported the theory that petitioner intentionally committed the crime out of jealousy and anger.    Based on this evidence, there is no reasonable likelihood that a person in petitioner's shoes would have chosen to go to trial and risk a life sentence without the possibility of parole.    Therefore, petitioner failed to show that counsel's performance was deficient under an objective standard of reasonableness and that he would have chosen to go to trial but for counsel's errors.

*Id.* at *4

With respect to Petitioner's second assignment of error, the SCAWV rejected Petitioner's claim that his guilty plea was not knowing and voluntary.  *Id.* at *5.   The SCAWV's ruling states as follows:

Petitioner alleges his counsel failed to advise and explain to him the diminished capacity defense. However, this allegation is supported only by petitioner's testimony at the omnibus hearing.    At the plea hearing, petitioner testified that he believed the plea agreement was in his best interest despite this defense.    Further, it is clear that the State possessed substantial evidence that contradicted any diminished capacity defense that could be presented by petitioner.    Indeed, the forensic evaluator expressed that both petitioner's jealous and angry motive or his impulse control disorder were possible theories to explain his actions.    Accordingly, even if petitioner's counsel did not fully explain the diminished capacity defense, it would not have substantially affected the fact-finding process because the jury would have considered both possible theories and evidence to support each.

*Id.* at *5.

### D.    The instant § 2254 petition

On April 6, 2020, Petitioner filed the instant § 2254 petition, raising three grounds for habeas corpus relief: (1) involuntary guilty plea; (2) ineffective assistance of trial counsel; and (3) diminished capacity.   (ECF No. 2 at 6-7).   Petitioner seeks to have his

8

conviction and guilty plea set aside and to be able to renegotiate his plea deal.    (*Id*. at 8).

On October 25, 2021, Respondent, by counsel, filed the instant Motion for Summary Judgment (ECF No. 7), asserting that Petitioner is not entitled to habeas corpus relief.    Pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the undersigned entered an Order and Notice advising Petitioner of his right and obligation to respond to Respondent's motion for summary judgment and the procedures for responding to such a motion.    (ECF No. 11).    Petitioner was further notified that a failure to respond to Respondent's motion may result in entry of summary judgment denying the relief sought in his petition and dismissing the case.    (*Id*.)    Petitioner's response was due by April 15, 2022.    (*Id*.)    However, to date, he has failed to file a response or communicated with the court in any way.    Nor did Respondent file a reply. This matter is ripe for adjudication.

## APPLICABLE STATUTES AND CASE LAW

### A.    Habeas review under 28 U.S.C. § 2254

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that under the "contrary to" clause, a federal court may grant a writ of habeas corpus with respect to claims adjudicated on the merits in state court only if (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) if the state court decides a case differently from the Supreme Court on a set of materially indistinguishable facts.    The Court further held that under the "unreasonable application" test, a federal court may grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court only if the state court identifies the correct governing principle from the Supreme Court's decision, but unreasonably applies that principle to the facts of the prisoner's case.    *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.    The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

**B.    Motions for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.    *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991).    Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).    Summary judgment is required where the non-moving party

10

fails to make a sufficient showing of an essential element of a claim.   *Id.*

## ANALYSIS

### A.      Petitioner's petition is untimely under 28 U.S.C. § 2244(d)(1).

28 U.S.C. § 2244(d)(1), which is part of AEDPA, imposes a one-year period of limitation for filing of § 2254 habeas petitions.   The one-year period runs from the latest of one of four specified events: (A) the date on which the judgment became final, by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1); *See also Jimenez v. Quarterman*, 555 U.S. 113, 114 (2009) ("The [AEDPA] establishes a 1-year time limitation for a state prisoner to file a federal habeas corpus petition. That year runs from the latest of four specified dates.")

Additionally, the one-year statute of limitations is subject to certain exceptions and tolling doctrines. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that "§ 2244(d) is subject to equitable tolling in appropriate cases").   The statute itself expressly provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28

U.S.C. § 2244(d)(2); *see also Holland*, 560 U.S. at 661 (noting that § 2244(d) "expressly tolls the limitations period during the pendency of a properly filed application for state collateral relief.") (Scalia, J., dissenting, in part).

To calculate whether Petitioner timely filed the instant § 2254 petition, the first important date to determine is that of the final judgment, by the conclusion of direct review, or the expiration of the time for seeking such review.   28 U.S.C. § 2244(d)(1)(A). "A judgment becomes final: (1) when the opportunity to appeal the [trial] court's judgment expires; (2) when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction; or (3) when the Supreme Court of the United States denies certiorari."   *Riley v. Vest*, No. 5:17-cv-02367, 2018 WL 616160, at *3 (S.D. W.Va. Jan. 5, 2018) *report and recommendation adopted* No. 5:17-cv-02367, 2018 WL 606208 (S.D. W.Va. Jan. 29, 2018) (internal quotations and citations omitted).

While federal courts are permitted to consider the timeliness of a § 2254 petition *sua sponte*, the statute of limitations is an affirmative defense, and is not jurisdictional. Thus, it is waivable where it is not asserted by a respondent in a responsive pleading. Nonetheless, in *Day v. McDonough*, 547 U.S. 198, 201-02 (2006), the Supreme Court acknowledged a federal district court's authority to consider a forfeited limitations defense when extraordinary circumstances so warrant.   The Court reasoned that AEDPA's statute of limitations, like the exhaustion doctrine, "implicat[es] values beyond the concerns of the parties." *Id.* at 205.   The *Day* Court further stated "[t]he AEDPA statute of limitation promotes judicial efficiency and conservation of judicial resources, safeguards the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and lends finality to state court judgments within a

reasonable time." *Id.* at 205-06 (quoting *Acosta v. Artuz,* 221 F.3d 117, 122 (2d Cir. 2000); s*ee also Wood v. Milyard,* 566 U.S. 463, 472 (2012) ("Only where the State does not 'strategically withh[o]ld the [limitations] defense or cho[o]se to relinquish it,' and where the petitioner is accorded a fair opportunity to present his position, may a district court consider the defense on its own initiative and 'determine whether the interests of justice would be better served' by addressing the merits or by dismissing the petition as time barred.") (quoting *Day*, 547 U.S. at 210-11) (quotation marks omitted); *Adkins v. Dingus*, No. 2:14-cv-27083, 2015 WL 10353151, *8-9 (S.D.W. Va. Dec. 23, 2015), *report and recommendation adopted by* 2016 WL 737938 (S.D.W. Va. Feb. 23, 2016) (granting *sua sponte* dismissal of petition as untimely where statute of limitations defense was not addressed in respondent's motion for summary judgment but was apparent from the record).

Here, Respondent's motion is silent as to the timeliness of Petitioner's § 2254 petition but does not affirmatively waive the statute of limitations defense. Petitioner was sentenced on April 16, 2009, and he did not file a direct appeal. Thus, his judgment became final on or about August 16, 2009, when the four-month period for filing an appeal in the SCAWV expired. *See Daniels v. Waid*, No. 2:09-cv-00244, 2011 WL 1043490, at *1 (S.D.W. Va. Mar. 18, 2011) (The § 2254 petitioner's right to file a direct appeal with the SCAWV expired four months after he was sentenced) (citing W. Va. R. Crim. P. 37(b)(3)); *Macri v. Ballard*, No. 5:14-cv-11, 2015 WL 892957, at *9 (N.D.W. Va. Mar. 2, 2015) ("The petitioner was sentenced by order entered August 2, 2010. Because petitioner did not file a direct appeal, his sentence became final when the time for seeking such review expired."). Petitioner took no further action until he filed his petition for

post-conviction habeas corpus relief in the Circuit Court of Mercer County in December of 2015, more than six years later.

Thus, Petitioner's one-year period of limitations to file a § 2254 petition commenced on August 16, 2009, when his judgment became final, and he was required to file his § 2254 petition by August 16, 2010, but no such petition was timely filed. Moreover, Petitioner's state habeas petition, which was filed in August of 2015, did not toll the statute of limitations because it had already expired by that date.

Therefore, Petitioner's § 2254 petition, filed on April 6, 2020, is clearly untimely under § 2244(d)(1)(A). Furthermore, there is no basis for an alternative calculation of the statute of limitations under the other subsections of § 2244(d)(1) or any apparent basis for equitable tolling of the statute of limitations. Accordingly, given the obvious untimeliness of Petitioner's § 2254 petition, the undersigned proposes that the presiding District Judge **FIND** that the instant petition should be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

**B.    Petitioner's claims for relief fail on the merits.**

To the extent, however, that the presiding District Judge should find that Respondent has waived the statute of limitations defense by failing to raise it in its motion, and that this court cannot address the same *sua sponte*, the undersigned will also address the merits of each of Petitioner's claims for habeas corpus relief.

1.    Voluntariness of guilty plea.

In Ground One of his § 2254 petition, Petitioner asserts that his guilty plea was not knowing and voluntary because he "was misled to believe that he would only serve 7 y[ea]rs if he signed the plea deal" and "[h]is lawyer told him he had to sign the plea deal."

(ECF No. 2 at 6-7).    However, his present assertions are wholly belied by the acknowledgements and admissions he made during his plea hearing.

As noted by Respondent, "[t]he standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Walton v. Angelone*, 321 F.3d 442, 462 (4th Cir. 2003).    In determining constitutional validity, "courts look to the totality of the circumstances surrounding the guilty plea" and "grant[] the defendant's solemn declaration of guilt a presumption of truthfulness."   *Id.*   Thus, "[a]bsent clear and convincing evidence to the contrary, [a defendant] is bound by the representations he made during the plea colloquy." *Id.*   (ECF No. 8 at 11).   Respondent contends that the state courts' decisions finding that Petitioner's guilty plea was knowing and voluntary and denying him habeas corpus relief are not contrary to federal law and are factually supported by the record.   (*Id.* at 12-16).   Petitioner has not opposed Respondent's motion or in any way disputed these assertions.

As evident from the circuit court's order, which quotes the plea transcript and guilty plea documents in minute detail, the trial court conducted an extensive colloquy with Petitioner to ensure that his guilty plea was made knowingly, intelligently, and voluntarily.   Absent clear and convincing evidence to the contrary, Petitioner is bound by the representations he made during the plea colloquy.   *Fields v. Attorney General of State of Maryland,* 956 F.2d 1290, 1299 (4th Cir. 1992). Petitioner has not presented sufficient evidence demonstrating that he was forced, coerced, threatened, or improperly induced into pleading guilty.   *See Brady v. United States,* 397 U.S. 742, 755 (1970) (holding that a guilty plea is made knowingly and intelligently if the defendant is fully

15

aware of the direct consequences of his guilty plea and was not induced by threats, misrepresentations, or unfulfilled promises); *see also Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (constitutional prerequisites of a valid plea are satisfied where the record reflects that the nature of the charge and the elements of the crime were explained to defendant by counsel or the court).

At his plea hearing, Defendant gave sworn responses to the trial court and acknowledged that he understood the charge to which he was pleading, the penalties for that charge, and the consequences of his plea. He further represented that he was fully satisfied with the assistance of his counsel, that pleading guilty was his own decision, and that no one had forced or coerced him to do so. Petitioner contends that he was improperly led to believe that good time credit would apply to his sentence, making him eligible for release in 7.5 years, rather than 15. However, it is apparent from the plea transcript that the trial court clearly advised Petitioner that he would have to serve a minimum of 15 years before he would even be eligible for release and that there was no guarantee that he would ever be released on parole and could spend the rest of his life in prison. (ECF No. 7, Ex. 3 at 4-5, 7-8, 48-49, 52). Petitioner clearly acknowledged these consequences and still agreed to plead guilty, and he must be held to those representations made at his plea hearing.

Both the circuit court and the SCAWV made comprehensive findings determining that Petitioner's guilty plea was knowingly, voluntarily, and intelligently entered and found that his claim for habeas relief on this basis lacked merit. Based on its review of Petitioner's representations during the plea hearing, the circuit court found that "Petitioner's claim that his plea was not knowingly, voluntarily, and intelligently made

16

[was] without merit."   (ECF No. 7, Ex. 13 at 41).   On appeal, the SCAWV substantively reviewed this claim and found "no error in the circuit court's finding that petitioner's guilty plea was voluntarily made."   *Omarrah*, 2020 WL 261736, at *5.

The undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on his claim concerning the validity of his guilty plea were not contrary to, or an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and Respondent is entitled to judgment as a matter of law on Ground One of Petitioner's § 2254 petition.

2.   Ineffective assistance of counsel claim.

In Ground Two of his § 2254 petition, Petitioner asserts that his trial counsel provided ineffective assistance during his guilty plea proceedings.   Specifically, Petitioner claims that his "counsel misled him to sign the plea deal," "did not effectively explain [the] legal case to him," and "fail[ed] to challenge issues in [the] plea deal." (ECF No. 2 at 7).   Petitioner further claims that his attorneys were "overbearing" and he simply "did as [they] told him." (*Id.*)

The Supreme Court addressed the right to effective assistance of counsel as guaranteed by the Sixth Amendment in *Strickland v. Washington*, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.   As addressed in detail in Respondent's brief, "the burden of proof to show ineffective assistance of counsel is on Petitioner, *see United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010), who must prove (1) "that

17

counsel's representation fell below an objective standard of reasonableness" and (2) that any such deficiency was "prejudicial to the defense," *Strickland*, 466 U.S. at 688, 692. Both prongs must be demonstrated to obtain relief. *United States v. Roane*, 378 F.3d 382, 404 (4th Cir. 2004). "[A] failure of proof on either prong ends the matter." *Id.*

The first *Strickland* prong is competence; Petitioner must show that his counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-91. There is a strong presumption that the conduct of counsel was within the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel. *Id.* at 688-89.

> In order to meet the first prong, [Petitioner] must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Id.* at 690. This inquiry is directed at whether defense counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The question is whether counsel made errors so fundamental that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 88.

The second *Strickland* prong is prejudice; "[t]he [Petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

18

sufficient to undermine confidence in the outcome." *Id.* at 694.  The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice.  *Id.* at 697.

In *Hill v. Lockhart*, the Supreme Court held that the two-part *Strickland* standard applies to challenges to guilty pleas based upon ineffective assistance of counsel.  474 U.S. 52, 58 (1985).  However, in assessing the prejudice prong, courts must consider "whether there is a reasonable probability that, but for counsel's errors, [Petitioner] would not have pleaded guilty and would have insisted on going to trial."  *Id.* at 59. Furthermore, "[w]hen evaluating objective reasonableness under the prejudice prong of *Strickland*, the challenger's subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Christian v. Ballard*, 792 F.3d 427, 452-53 (4th Cir. 2015) (citing *United States v. Fugit,* 703 F.3d 248, 260 (4th Cir. 2012)).

Thus, Petitioner cannot satisfy *Strickland* "merely by telling the court now that he would have gone to trial then if he had gotten different advice" from his counsel.  *Id.* Instead, Petitioner must "'convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Id.* (quoting *Padilla v. Kentucky,* 559 U.S. 356, 372 (2010)); *see also Hill v. United States*, No. 2:15-cr-00026, 2019 WL 3425049, at *15 (S.D.W. Va. May 21, 2019), *report and recommendation adopted*, 2019 WL 2745852 (S.D.W. Va. July 1, 2019).

*Strickland* further cautions that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the

19

conduct from counsel's perspective at the time" indulging a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Additionally, under the highly deferential standards created by § 2254(d), "[e]stablishing that [the] state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Harrington*, 562 U.S. at 105.

As noted above, here, the circuit court found that Petitioner's counsel adequately investigated the case and determined that there was no good faith basis to pursue a diminished capacity defense, and that Petitioner agreed with that strategy.   Moreover, the court found that, despite overwhelming evidence to support Petitioner's guilt, his counsel secured a plea agreement whereby he would be eligible for parole.   (ECF No. 7, Ex. 13 at 50-68).   On appeal, the SCAWV thoroughly addressed Petitioner's ineffective assistance of counsel claim and found, as also noted above, that "[P]etitioner failed to meet the requirements of *Strickland*."   *Omarrah*, 2020 WL 261736, at *4.

Petitioner's guilty plea documents and statements made during his plea hearing demonstrate that he acknowledged that his counsel had sufficiently and effectively advised him about the nature of the charges and possible defenses, and he confirmed that he understood the terms of his plea, and the consequences thereof, as further comprehensively addressed by the court.   Petitioner acknowledged that he did not have any outstanding questions or concerns and that he was satisfied with the assistance of his counsel.   Petitioner cannot now plausibly argue, let alone demonstrate to a degree of reasonable probability, that, absent his trial counsel's alleged errors, he would have declined the plea offer and chosen to proceed to trial where he would have faced a sentence of life without mercy.   *See Hill*, 474 U.S. at 59 ("[I]n order to satisfy the

'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief on his claims of ineffective assistance of counsel were not contrary to, or an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and Respondent is entitled to judgment as a matter of law on Ground Two of Petitioner's § 2254 petition.

3.    Diminished capacity defense was waived by guilty plea.

In Ground Three of his § 2254 petition, Petitioner alleges that "his low level of learning [and] handicap of understanding," as well as his "excessive drug use," "created a diminished capacity" which would have negated the *mens rea* for first degree murder. (ECF No. 2 at 7).    Petitioner further claims that at the time of his plea he "was on [a] high dosage of bi-polar meds," was "suffering from ADHA as well as depression [and] mood swings," and "had learning disabilities." (*Id.*)

However, "a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (internal citation and quotation omitted). This waiver includes any defenses that could have been raised by the defendant. *See United States v. McWaine*, 640 F. App'x 242, 243 (4th Cir. 2016) ("[Defendant's] knowing and

21

voluntary plea constitutes a waiver of all nonjurisdictional defects, including an unasserted defense.") (internal quotation marks omitted); *United States v. Baca-Arias*, 590 F. App'x 221, 222 (4th Cir. 2015) ("It has long been the law in this Circuit that a valid guilty plea waives all nonjurisdictional defenses.").

As previously addressed above, the state courts found that Petitioner was competent to enter his guilty plea and that the same was knowing and voluntary and those findings are not contrary to the applicable federal law.  Furthermore, during the plea hearing, Petitioner affirmatively acknowledged the availability of a diminished capacity defense, but determined it was in his best interest to forego that defense and plead guilty. (ECF No. 7, Ex. 3 at 30-31).   Consequently, Respondent asserts that Petitioner waived this defense through his knowing, intelligent, and voluntary guilty plea and that this Court should decline to consider Petitioner's diminished capacity claim.   (ECF No. 8 at 21-23). Petitioner has not disputed these assertions.

The undersigned agrees that this claim was waived by Petitioner's knowing and voluntary guilty plea and is, further, substantively meritless.   Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state courts' decisions denying Petitioner habeas corpus relief were neither contrary to, or an unreasonable application of, clearly established federal law; nor were they based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Therefore, the undersigned further proposes that the presiding District Judge **FIND** that there is no genuine issue of material fact and Respondent is entitled to judgment as a matter of law on Ground Three of Petitioner's § 2254 petition.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Respondent's Motion for Summary Judgment (ECF No. 7), **DENY** Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 2), and dismiss this matter from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.    Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.    Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals.    *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).    Copies of such objections shall be served on the opposing party and Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy to Petitioner, and to transmit a copy to counsel of record.

July 6, 2022

Dwane L. Tinsley
United States Magistrate Judge